I'm glad I can recognize day-to-day, that's... Likewise, Your Honor. Good morning. Good morning, Your Honors. May it please the Court. My name is Harvey P. Sackett. I appear on behalf of the appellant, Orendi Hupe. I would like to reserve two minutes for rebuttal. This morning I would like to focus on the Administrative Law Judge's finding that while Hupe could not return to any of his former work, he could perform other jobs. The Administrative Law Judge made this finding without vocational expert testimony. The issue for the Court is whether or not the ALJ erred by his failure to do so in denying the claim at Step 5 of the sequential evaluation process. Well, now that we're in Step 5, let me ask you, as opposed to Step 4, that your argument, I think, narrows somewhat in your reply brief as opposed to in your opening brief. I read your opening brief basically to say that you always have to have a vocational expert. Then by the time we got to the reply brief, there can be instances where you don't have to have one. Is that correct? That's correct, Your Honor. All right. So maybe just from a policy standpoint, you know, I think we're talking a little bit about line drawing here. You know, when do you need to have one, when you don't need to have one, so that you can give us some legal and practical guidance there in terms of the exertional and non-exertional. And I'm going to assume on some level that probably everyone that's disabled might be a little depressed, that, you know, from the standpoint that that's probably not uncommon to see that. So when can an ALJ do this without a vocational expert? There are bright-line distinctions. And germane to this case, Your Honors, the administrative law judge made a specific finding that Hupe suffered from a severe mental impairment. By regulation, that means that this was not a de minimis claim, that it met the basic threshold, that the depression. And this was at level two, right? Correct, Your Honor. He talked about back pain and depression impairments. And you're claiming, therefore, that at step five, that ought to be sufficient to say a vocational expert is not required? That's correct, Your Honor, because the judge made two very specific findings. He said both the back and the depression, separate and apart from each other, were severe impairments. This Court has repeatedly said that once you have a severe, as opposed to a non-severe, non-exertional or mental impairment, vocational testimony is necessary at step five. Now, the commissioner incorrectly states in their brief that the depression was not significant, that would be to undo the administrative law judge's finding. That finding was already made at step two. What's your best case on this issue? There are several, Your Honor. The most recent case would be this Court's decision in Edlund. Now, even though the administrative law judge did have a vocational expert, he did not ask at step five to consider the depression, which was found to be severe. Previous cases would include this Court's decision in Andrews, cited in the appellant's opening brief, where, again, there was the presence of a severe non-exertional impairment, a severe mental impairment, and the Court determined that error was made at step five because vocational testimony was not taken on that issue. All of the cases cited by the commissioner, in terms of their underlying facts, can be easily distinguished from the case at hand, the reason being that unlike this case, where the administrative law judge did indeed make a finding of a severe mental impairment, in all the cases cited by the commissioner, the administrative law judge made a finding to the contrary, that the underlying alleged non-exertional impairment was deemed to be non-severe. So getting back to Judge Callahan's question. So from a practical standpoint, let's say, okay, you have a back injury, and then you can go look at this grid and say, okay, well, then, if you have this injury, you could do this, you could do that, you could do, but what you're saying is because of the mental disability, even though with the back injury he could do those things, the mental disability would prevent him from being able to do them. It might possibly prevent him, and the way to determine that... Because, say, for example, you can lift this amount so you could do that particular job, but your mental disability is such, you can't be around any people. That's correct, Your Honor, and that's why this is a question for a vocational expert to answer. It's not, as the Court said in Burkhart, for the administrative law judge to define and decide by themselves. The second issue I'd like to address would be the particular finding made by the administrative law judge as to alternate occupations. Now, even if we assume, number one, that the administrative law judge's residual functional capacity finding was correct, once he got to step five, having assumed the role of vocational expert, there were certain necessities that had to be met. He failed to do so. Specifically, the administrative law judge, after laying out certain occupations he felt that Hupe could perform, never gave job incidents, and there's a fundamental requirement for this finding to include some reference to the frequency of these alternate occupations in either the local economy or in several regions of the country. Now, this Court in Barker, though it's not cited in my brief, was confronted with whether or not a certain particular number did or did not constitute significant numbers. That's not the issue here. The issue here is the absolute failure on the ALJ's part to give us any number whatsoever. And for that reason alone, the case should be remanded. Can I go back to the previous issue? Wasn't there evidence in the record that he was able to do activities of daily living and maintaining social functioning? There was evidence of that, and that was one aspect of the ALJ's finding with regard to his mental condition. The more germane to this particular case relates to a second of the four categories, Your Honor, that being his ability to focus and concentrate on certain things. And that's what the ALJ ultimately decided was the basis for the deficit. Not really his activities of daily living, but the third category of four, the ability to focus and concentrate. So we're not challenged in the ALJ's finding in that regard insofar as Hupe's ability to perform his activities of daily living. Although I have more than two minutes left, I'm going to reserve the balance of my time.  Thank you. Good morning, Your Honors. My name is Sarah Ryan, and I'm privileged to represent the Commissioner of Social Security. Good morning. Thank you. Let's get right to the heart of this. This is a ten-minute argument. Why should we not consider the appellant's back pain a significant non-exertional limitation in light of the most recent diagnosis by his treating physician, Dr. McSherry, that based on clinical evidence the appellant will continue to deteriorate and should not work, and he fired the doctor who said you need exercise to feel better. So we had an Arnold Schwarzenegger doctor that wanted fitness and hard work. That's what all the other doctors said, the doctors who said there's nothing wrong with you, you can do light work. And all the doctors said, no, you can't go back to your work as a heavy equipment operator and a truck driver, but you can do a lighter type work and let's get you to vocational rehabilitation. That's why you're not disabled. Let me ask you on this, the step five determination, because I mean, I've seen these cases often as an appellate judge, but I didn't practice in this area. Just from a practical standpoint, what goes on here, it seems easy enough to have a vocational expert just come in and add that to, I mean, how often, you know, as a practical matter do ALJs have them come in or how frequently do they come in? How frequently do ALJs have to make a decision here whether, you know, in terms of this line drawing, I mean, if we're going to step into things as a court, you know, give me some parameters as to what we're talking about. Part of the ALJ's job is a matter of judgment, a matter of efficiency of moving his docket, determining which cases merit it and which cases do not. And contrary to counsel's argument, there is no bright line, and certainly the bright line he drew was not correct. Well, he did, this person did have suicidal ideations that was mentioned here, and, you know, obviously on some level, when people, you know, talk about that, you have to, you know, you've got to be a little concerned. Not everyone wants to commit suicide, thankfully. Well, no, at one point he expressed exasperation and said, I feel like I want to kill myself. That's a little bit of a little bit different from having consistent or chronic suicidal ideations. Well, then how do we, there's the determination at step two that both of these disabilities are severe. Then we get to step five, you know, how do we sort those out? Thank you, Your Honor. I'd like to speak to that point and specifically distinguish this case from Edlin v. Massonary, which is the case that claimant relies on. They are considerably different factually. In Edlin v. Massonary, the holding was not a step five holding. In Edlin, factually, the psychological and psychiatric findings were that the claimant in that case had marked psychiatric difficulties, was seriously disturbed. In this case, the finding was that the claimant had mild to moderate concentration difficulties. I thought he used the word severe. No, sir. No, ma'am. Excuse me. Did not. That was claimant's counsel's characterization. The finding of Dr. Billick, who was the reviewing physician who reviewed the medical records, was mild to moderate. All right. But what did the court say when it moved from step two to step three? What were the court's findings? Now, a step two finding, as Justice O'Connor said, in Bowen v. Yuckert, is merely a threshold determination as to whether or not the commissioner should go forward with the sequential evaluation. That's all it is. That is all a step two finding is. And Yuckert, I mean, excuse me. So it's not sort of like a collateral estoppel, res judicata argument later that when you get to step five, you don't do anything else? Is that yours? No case that holds that, and Edlund does not hold that. Edlund said that the consequence of not finding this seriously disturbed, markedly impaired individual who had drug abuse in that case, not severely mentally impaired at step two, the consequence of that was that then at step five those mental limitations were not included in the hypotheticals to the V.E. That was the consequential damage of not finding a severe mental impairment in that case. But the error, the legal error, was finding no severity at step two in Edlund. So it's not a step five case. It's a step two case in Edlund. Here the ALJ found severity at step two and went through the sequential evaluation and accounted for the mild to moderate impairment in finding that there was a moderate impairment in concentration. And the ALJ accounted for that by finding in his residual functional capacity assessment, the acronym for which is RFC, that the claimant was limited to simple repetitive tasks. Is there any, okay, you're saying Edlund doesn't stand for the proposition that Petitioner says it stands for. Is there any case specifically that says, you did mention I think Bowen, but that specifically says, you know, step two does not equal step five? No, ma'am. Okay. So we don't really have anything either way exactly there. I mean, Bowen is your argument. It's logic. Okay. So do we need something? This court may certainly supply that. All right. I also would like to point out the evidence that supports the position of the commissioner. For example, when Dr. Brown administered the Minnesota Multiphasic Personality Inventory, the claimant sat still for two and a half hours, and even when offered a break, he declined taking a break, which certainly shows his ability to concentrate and shows that he's able to sustain his concentration. He was able to sustain his focus and attention for two and a half hours. Now, that's not evidence of a seriously or remarkably disturbed or impaired individual who cannot concentrate sufficiently for a job. So the ALJ had substantial evidence to sustain his finding that this was an individual who could do simple repetitive tasks. But let's ask the question that was raised by opposing counsel. The ALJ did not identify specific jobs. He did not have to. He had the medical vocational rules, and he only has to use a V.E. when there are significant non-exertional limitations. That's the bright-line rule, if there is a bright-line rule. And simple repetitive tasks do not – are not a significant non-exertional limitation, and that's what RAISI v. Heckler stands for. Thank you. Because there was substantial evidence supporting the ALJ's decision, I urge the Court to affirm the Commissioner's decision as the district court did, and I thank the Court for its attention. Thank you for your argument. Your Honors, I'd like to go back to Edlund, why it applies relative to the bench's questions. Opposing counsel uses the word significant, and I believe incorrectly. The primary test is, number one, is the non-exertional, or in this case the mental impairment, severe or not severe. By definition – and I apologize for repeating myself – by definition, a severe limitation does indeed impose significant limitations. The regulation for non-severity says the converse. It does not impose significant limitations. And where we're getting caught up here is, once the ALJ made a finding that Hupe's depression was severe, the next – Where was that finding? Was that in Step 2? It was in Step 2. Because Edlund said he did not make that finding. And that's why I'm trying to clarify that, Judge Nelson. All right. He did, in fact, make the finding that – I'm sorry, to the record. It's on page 423 of the excerpts of record. It'll be on the third full paragraph. And if you'd like, I can read that, Judge Nelson. The medical evidence indicates that the claimant has low back pain and depression impairments that are severe within the meaning of the regulations. All right. Continue. But not severe enough to meet or equal one of the impairments listed in Appendix A. That means that the severity did not meet the requisite level required to find him disabled at Step 3. That's why we had to continue to Step 4 and eventually to Step 5. But, now, that's also conjunctive. It says mental and back. Right? That's correct. So that doesn't – you know, I hate to parse things, but it doesn't logically say the mental was severe, the back was severe. It says the mental and the back. So from that – I'm actually then reading the ultimate conclusions, and he states has an impairment or combination of impairments considered severe. The fact of the matter is that having said that it was mild to moderate, it got beyond the threshold level. And if we look at the report upon which was relied by the administrative law judge, it includes both moderate and marked limitations. So once you define it as severe, then the question is, is it moderate, marked, or extreme? It's not a question of whether it's significant or not significant. That was already decided at Step 2. All right. Your time has expired. This matter will stand submitted. I'd like to thank both of you for your argument.
judges: D.W. Nelson, Callahan, Carney